**In re Adoption of T.M.Z. and A.E.Z.**

*Dawn M.L. Palange,* for mother.
*Mark J. Merolla,* guardian ad litem, for children.
*Gary S. Fronheiser,* for father.

SCHMEHL, P.W., *J.,* February 9, 2009—This matter came before the court on the petition of S.M.H. (Mother) to terminate the parental rights of R.G.Z. (Father) to the children, T.M.Z., date of birth July 20, 1999, and A.E.Z., date of birth October 10, 2001. The petition to terminate Father's rights was filed on September 4, 2008 on the grounds set forth in 23 Pa.C.S. §2511(a)(1) and (2). After a hearing, at which Father appeared with court-appointed counsel, the court terminated Father's rights to the children. Father filed a timely appeal.

Paragraph 2511(a)(1) provides that parental rights in regard to a child may be terminated on the grounds that a "parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to

perform parental duties." Paragraph (a)(2) provides that parental rights may be terminated on the grounds that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."

"While incarceration of a parent does not, in itself, provide grounds for the termination of parental rights[,] a parent's responsibilities are not tolled during his incarceration." *In re D.J.S.,* 737 A.2d 283, 286 (Pa. Super. 1999). "Parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities." *Id.* at 287. The long-standing law of the Commonwealth is that the inability of a parent to perform parental duties makes him or her just as parentally unfit as a parent who refuses to perform these duties. *In re B.L.W.,* 843 A.2d 380, 387 (Pa. Super. 2004). Regardless of inability or refusal, once a parent demonstrates a failure to fulfill his or her parental duties, the child's right to fulfillment of his or her potential in a permanent, healthy, safe environment with proper parenting supersedes the parent's basic constitutional right to custody and rearing of the child. *Id.* at 388. In terminating the rights of a parent, the court must give "primary consideration to the developmental, physical, and emotional needs and welfare of the child." 23 Pa.C.S. §2511(b).

Both children were born of the parties' marriage, which ended upon the realization that Father had been embez-

zling from his employer, who happened to be Mother's father. The parties were vacationing at the shore when the embezzlement was revealed. Father returned home but Mother remained at the shore with the children and her family for several more weeks. Upon Mother's returning to Berks County with the children, she allowed Father to visit with the children and even allowed these visits to occur in her home without her being physically present.

In December 2002, Mother obtained a protection from abuse order against Father. Thereafter, Father was incarcerated from December 2002 until May 2003 for indirect criminal contempt. Father had two other indirect criminal contempt convictions for violation of the protection from abuse order in 2003. After being incarcerated, Father made no contact with Mother in order to see the children. In October 2003, Father filed a petition to modify in the parties' custody action, which led to a December 2003 order granting Father supervised visits with the girls.

Supervised visits began in February 2004 and ended in February 2006. The supervised visits were the first contact that Father had with the children in well more than a year. At the hearing, the visit supervisor, Sandra Lamma L.C.S.W., testified that she supervised no other parent during custody visits as long as she did Father. Throughout her supervision she had concerns regarding Father's behavior during visits and his parenting ability. These concerns resulted in interruptions in the visitation schedule and suggestions that Father take parenting and anger management classes, which he apparently was not inclined to do at the time. Ms. Lamma also had concerns

that Father did not understand normal child development and that he would become upset that the children were not tuned in to his needs when he should have been more concerned about their needs. She was also concerned about the children's safety insofar as Father did not always provide adequate supervision. On cross-examination, Ms. Lamma revealed that the children were not always happy to see Father. Sometimes Father brought gifts to the visits, but he turned this positive to a negative by becoming angry at the children for not bringing these gifts with them to future visits. Father put inappropriate pressure on the children, particularly given that they were too young to be expected to do certain things.

For several months after February 2006, Father had unsupervised visits with the children. In December 2006, Father moved to Florida for seasonal employment. Although he returned to Pennsylvania, he has not seen the children since. For a limited period of time following the relocation, Father irregularly telephoned the children; however, he sent no gifts, Christmas cards, or letters.

Upon his return to Pennsylvania in April 2007, Father was incarcerated as a result of convictions for felony criminal trespass and felony intimidation. He was sentenced to a term of incarceration of three to seven years and has a minimum release date of April 2010.

Although Father testified that he attempted to send mail to the children from prison, he believed the mail was not getting through because of not having Mother's correct address. The credible testimony was clear that at all times Father had an address and phone number for Mother and, furthermore, Mother testified that she did receive a letter from Father in July 2007 that expressed

Father's anger at his ex-girlfriend and had nothing to do in any way with the parties' children. Regardless of the testimony by Father that he attempted to correspond with the children during the first few months of his incarceration, it is clear that Father made no attempt to contact the children after August 2007.

Father's failure to fulfill his parental duties has included his failure to pay child support. His incarceration since April 2007 clearly interfered with his ability to pay support; however, he failed to maintain support payments even prior to his incarceration. To make matters worse, on more than one occasion Father offered to abdicate his role as the children's father in exchange for a monetary payment.

During his testimony, Father denied that his parental rights were for sale as well as other allegations made by Mother. The court found that this and much of Father's other testimony was incredible. Aside from providing incredible testimony, Father further hurt his case by failing to fully utilize the services of the attorney appointed by the court at Father's request, conducting much of the examination of witnesses himself and focusing many of his questions and much of his testimony on the parties' relationship, or lack thereof, and the arrival of Mother's new husband in their lives. It seemed as though Father's relationship with the children was an afterthought. Even Father's sole supporting witness could not verify that Father's contact with the children while he was in Florida was with his own children or the children of his most recent girlfriend.

It is clear that for well more than a year Father has refused or failed to perform his parental duties thereby

permitting the court to terminate his parental rights under 23 Pa.C.S. §2511(a)(1). Aside from Father's checkered history of involvement with the children prior to August 2007, there is no dispute that Father did not attempt any contact with his children between August 2007 and September 2008, when the petition to terminate his rights was filed. Father did not see the children. He did not call the children. He did not write letters to the children or to Mother asking about the children. He did not send any gifts or support or take any steps in the custody action to enforce any rights of visitation or telephone or other contact. Given that one of the statutory grounds for the termination of parental rights applies, it is unnecessary to conduct further analysis; however, because Mother filed her petition under section 2511(a)(2) as well as section 2511(a)(1), the court makes the further determination that the termination of Father's parental rights is justified, given that his repeated and continued incapacity, neglect, and refusal to perform parental duties would have caused the children to be without essential parental care, control or subsistence necessary for their physical and mental well-being, but for the provision of the same by Mother and her husband, and the conditions and causes of Father's incapacity and neglect cannot or will not be remedied by the parent, at least not within a reasonable time. As mentioned above, Father's relationship with his children took a back seat to his concerns over making money and Mother's new love interest.

Perhaps the most telling fact of all and the clincher under section 2511(b), which requires the court to give primary consideration to, among other things, the emotional needs of the children, is that when interviewed by

their guardian ad litem, the children did not even once mention Father by name, title or otherwise. The children are happy and doing well in their home with Mother and her husband. No bond will be broken or other harm done as the result of terminating Father's parental rights and allowing the children and Mother's husband to proceed to establishing legally the relationship that exists in fact.

Turning to Father's concise statement of matters complained of on appeal, the court's view is that, despite Father's complaint to the contrary, the petitioners did present sufficient evidence to terminate Father's parental rights and that the court did not err by doing so. Father's third complaint that the court erred by not allowing the admission of an expert report is without merit given Father's failure to secure the expert at trial so as to allow cross-examination. Even if error, the error would be harmless given the report dates to 2003, well before the more than one-year period of non-involvement of Father in the children's lives. Also, while the report and testimony of Sandra Lamma were, in the court's view, properly considered given their relevance to Father's checkered history, they were but two small straws adding to the weight of Mother's case given Father's failure to act as a parent after August 2007.

While Father was granted in forma pauperis status in these proceedings, the court had no valid reason to order the payment of a personal debt of Father in order to secure a creditor as a witness. The petition for the payment did not set forth the manner in which the payment of this 2005 bill would be beneficial to Father's case, particularly given the passage of time since this person's in-

volvement and Father's ability to subpoena this person if the testimony was in fact so critical. As for Father's complaint number six, the court believes it made proper rulings on Father's objections and gave proper weight to the testimony of Father's supporting witness. Furthermore, the court is of the view that it properly considered the report of the guardian ad litem, seeing no bias in the report and hearing no objection to its admission.

Finally, the court gave all the weight that it could to Father's testimony considering its incredibility and, despite the court's consideration of the testimony, truthful or not, Father presented no evidence of attempting to maintain contact with the children or otherwise perform his parental duties after August 2007. Additionally, the court heard no credible evidence that Mother or her husband attempted to prevent Father's contacting the children and certainly not with the goal of permanently removing him from their lives.

For the foregoing reasons, the court entered its order of December 16, 2008 terminating Father's parental rights to the children, T.M.Z. and A.E.Z.